UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE MORALES, <br><br>      Petitioner, <br><br> -v- <br><br>UNITED STATES OF AMERICA, <br><br>      Respondent. | No. 18-cv-10120 (RJS) |
| UNITED STATES OF AMERICA <br><br> -v- <br><br>CATHERINE MORALES, <br>      Defendant. | No. 12-cr-322 (RJS) <br><br>MEMORANDUM AND ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

  Catherine Morales, who is currently incarcerated and proceeding pro se, moves to vacate or set aside her sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 646 (the "Petition" or "Pet."))[1] and Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6) (Doc. No. 676 (the "Motion" or "Mot.")).  In the Petition, Morales argues that her attorney provided ineffective assistance of counsel by (1) unreasonably advising her to reject a purported initial plea agreement and hold out for a better offer, and (2) failing to object to the factual basis of her guilty plea.  (Pet. at 27–43.) In the Motion, Morales contends that her convictions for violations of 21 U.S.C. §§ 846 and 848 were based on the same conduct and therefore violated the Constitution's Double Jeopardy Clause, U.S. Const. amend. V (Mot. at 3.)  For the reasons set forth below, the Petition and the Motion are both DENIED.

---

[1] Unless otherwise indicated, all docket citations refer to Morales's criminal case, 12-cr-322 (RJS).

## I. BACKGROUND

From 2008 to 2011, Morales was part of a violent drug trafficking organization ("DTO") that distributed crack cocaine and heroin in the Hunts Point area of the Bronx. (Presentence Report ("PSR") ¶ 23.) By 2011, Morales was a ranking member of the DTO, running a major heroin operation in the vicinity of East 163rd and Simpson Streets and supervising several workers who distributed heroin. (*Id.* ¶¶ 27, 31.)

Around that time, Bobby Morales,[2] a rival drug dealer, began encroaching on Morales's territory by selling drugs on the blocks around East 163rd and Simpson Streets. This led to a series of altercations between the rival dealers; at one point, Morales threatened Bobby that he would be killed unless he started selling drugs with her DTO. (*Id.* ¶ 31.) Following that threat, on June 28, 2011, a fight broke out between Morales and Bobby's three sisters, which resulted in Morales's being punched in the face. (*Id.* ¶ 32.) Morales reported the incident to Adony Nina, the leader of the DTO, who provided her with a gun and told her to "take care of this." (*Id.*) A short time later, Morales returned to the site of the altercation and shot at the three women. (*Id.* ¶ 33.) One of those shots struck Aisha Morales – Bobby's sister – in the head. (*Id.*) She was pronounced dead later that day. (*Id.*) Following this incident, Morales went on the run, living as a fugitive while keeping in regular contact with Nina and the DTO. (*Id.* ¶ 34.) After more than two years of evading the authorities, Morales was finally apprehended. (*Id.* ¶¶ 34, 36.)

On January 8, 2014, Morales was indicted on four counts: (1) conspiracy to distribute one kilogram and more of heroin and 280 grams of cocaine base, in violation of 21 U.S.C. § 846; (2) possessing and using firearms in furtherance of a drug trafficking crime, including brandishing and discharging said firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(i)–(iii); (3) intentionally

---

[2] Neither Bobby Morales nor Aisha Morales, his sister and the murder victim, is related to the Petitioner. For the sake of clarity, the Court refers to Bobby Morales by his first name only.

2

and knowingly killing Aisha Morales while engaged in the narcotics conspiracy charged in Count One, in violation of 21 U.S.C. § 848(e)(1)(A); and (4) causing the death of Aisha Morales through the use of a firearm in the course of a narcotics trafficking crime in violation of 18 U.S.C. § 924(j). (Doc. No. 231 ¶¶ 1–6.)  On counts two, three, and four, the Grand Jury also charged Morales with aiding and abetting each of the respective underlying offenses, in violation of 18 U.S.C. § 2.  (*Id.* ¶¶ 4–6.)

In late 2014, Morales's counsel and the government engaged in plea negotiations that yielded a series of offers from the government.  (Doc. No. 650 at 3–4.)  The government asserts that it extended four formal offers to Morales beginning on November 4, 2014 (*id.*), while Morales asserts that five offers were made, including one some time prior to November 4 (Doc. No. 646 at 27).  Morales contends that this initial offer had a sentencing guidelines range of twenty-five to twenty-seven years but does not specify any other terms of the offer.  (*Id.*)  Morales asserts that she rejected this alleged offer upon her counsel's advice that "he could get a better deal."  (*Id.* at 31.)  Neither party disputes the content, timing, or existence of the other four offers.  (*Id.* at 27; Doc. No. 650 at 3–4.)

On November 4, 2014, the government extended a plea offer – the first, according to the government – which would have required Morales to plead guilty to (1) conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and (2) possession and discharge of a firearm in furtherance of the narcotics conspiracy charged in the first count in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.  (Doc. No. 656-7 at 1–2.)  This agreement had a mandatory minimum sentence of twenty years' imprisonment and a maximum sentence of life imprisonment.  (*Id.* at 2, 4.)  Morales declined this offer.  (Doc. No. 555 at 8.)

On December 8, 2014, the government extended another plea offer that provided a choice of pleading to either (1) murdering Aisha Morales while engaged in narcotics offenses punishable under 21 U.S.C. § 841(b)(1)(A), in violation of 21 U.S.C. § 848(e)(1)(A), and possessing and using a firearm in furtherance of a conspiracy to distribute heroin and cocaine base, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Doc. No. 656-9 at 1–2); or (2) murdering Aisha Morales while engaged in narcotics offenses in violation of 21 U.S.C. § 848(e)(1)(A), with a stipulation that Morales was subject to a two-level increase in her sentencing guidelines range for obstructing justice by living as a fugitive (Doc. No. 656-10 at 1–2). Under the first option, Morales faced a minimum term of twenty-five years' imprisonment and a maximum term of life, with a stipulated guidelines range of 352 to 425 months' imprisonment. (Doc. No. 656-9 at 2, 4.) Under the second, Morales faced a minimum sentence of twenty years' imprisonment and a maximum sentence of life, with a guidelines range of 360 months to life. (Doc. No. 656-10 at 1, 3.)

On counsel's recommendation, Morales selected the second option, choosing the lower mandatory minimum sentence and the higher guidelines range. (Doc. No. 656 at 3.) On January 9, 2015, the government provided a final plea agreement, which revised the language concerning Morales's offense level but contained the same essential terms as the second plea option presented on December 8, 2014. (Doc. No. 656-1 at 34–39.) The following month, Morales appeared before the Court and pleaded guilty pursuant to the final plea agreement. (Doc No. 451.)

On October 14, 2015, Morales appeared for sentencing. (Doc. No. 577.) During that proceeding, the Court considered a variety of mitigating factors such as "the trauma of [Morales's] difficult childhood," the emotional control exerted by Adony Nina over Morales, and the letters submitted by her family and supporters. (*Id.* at 3–4, 46.) The Court nevertheless noted that Morales's crime had taken the life of a 21-year-old victim and that Morales showed little remorse

4

by fleeing for two years. (*Id.* at 42, 45.) The Court also considered that coconspirator Candido Antomattei received thirty years for his role in the drug conspiracy described above, and that "what Catherine Morales did here is . . . much worse." (*Id.* at 47–48.) Ultimately, the Court sentenced Morales to forty-five years' imprisonment with credit for time served, plus five years' supervised release. (Doc. No. 565.) Morales was also ordered to pay $17,000 in restitution to Aisha Morales's family for funeral costs. (Doc. Nos. 569, 570.)

Despite the appeal waiver contained in her plea agreement, Morales appealed her sentence on October 22, 2015 (2d Cir. No. 15-3367, Doc. No. 1), claiming, among other things, that her appellate waiver was unenforceable due to ineffective assistance of counsel (2d Cir. No. 15-3367, Doc. No. 39 at 45–49). On January 9, 2017, the Second Circuit affirmed Morales's conviction by summary order, noting that a habeas petition – not a direct appeal – was the proper vehicle for Morales's ineffective assistance claims and consequently declining to rule on those arguments. (2d. Cir. No. 15-3367, Doc. No. 78 at 1–2.) On March 30, 2017, Morales petitioned the Supreme Court for certiorari. (2d Cir. No. 15-3367, Doc. No. 83.) Her cert petition was denied on October 2, 2017. *Morales v. United States,* 138 S. Ct. 150 (2017). This Petition and Motion followed, and were fully submitted as of April 28, 2021.

## II.   MORALES'S SECTION 2255 PETITION

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). One source of constitutional error

that warrants relief under section 2255 is ineffective assistance of counsel. *See generally Massaro v. United States*, 538 U.S. 500 (2003).

The Sixth Amendment guarantees a criminal defendant's right to the effective assistance of counsel, including for plea negotiations. *See Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). When asserting a claim for ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness," and (2) this "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a movant's ineffective assistance of counsel claim if it fails to meet either prong of the *Strickland* test. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, courts begin from a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Courts must judge an attorney's performance in light of the circumstances he faced at the time of the relevant conduct, *see Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008), and should not "use hindsight to second-guess counsel's tactical choices," *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (internal quotation marks omitted). Thus, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009).

As to the second prong of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While this prong "does not require a showing that counsel's actions more likely than not altered the outcome," it does require a petitioner to show that "[t]he likelihood

of a different result [was] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (internal quotation marks omitted).

Morales first argues that her attorney provided ineffective assistance by unreasonably advising her to reject an initial plea agreement of twenty-five to twenty-seven years and to hold out for a better offer that never materialized. (Doc. No. 646 at 31.) Morales asserts that "[h]ad [she] been advised that . . . the government could rescind or fail to reopen their plea offer of 25–27 years[,] [she] would have accepted the government's plea [offer]." (*Id.*) The government denies that any such offer was made, stating that Morales "appears to have confused the terms of the initial offer" made on November 4, 2014. (Doc. No. 650 at 11.)

But even assuming that the government extended a twenty-five- to twenty-seven-year plea offer, Morales would still fail to satisfy the first *Strickland* prong. The Supreme Court has explained that, in the case of early plea bargain offers, "each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived," and "habeas courts must respect their limited role in determining whether there was manifest deficiency in light of the information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125–26 (2011). Thus, Morales "may not use hindsight to second-guess [her counsel's] strateg[ic] choices" simply because she is dissatisfied with the result. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). At the time of the purported plea offer, it was not objectively unreasonable for counsel to believe that the government might extend a plea offer that would allow the Court to sentence Morales to less than twenty-five years. (Doc. No. 651, Ex. A.)[3] As the Court noted during the sentencing

---

[3] In email correspondence with the prosecution, Morales's counsel noted that he gave Morales "bad advice" by advising her "to take the plea with the 20 year minimum because we believed she had a very good chance of receiving a sentence of less than 25 years." (Doc. No. 651, Ex. A.) But this statement of regret does not establish that counsel's advice fell below an objective standard of reasonableness. That advice reflected a professional judgement that simply resulted in an unfavorable result. Moreover, this admission was in relation to counsel's recommendation that Morales take option 2 instead of option 1 of the December 8 offer, an issue not raised by Morales in the Petition.

hearing, there were several mitigating factors that pointed towards leniency, such as the emotional influence on Morales by Adony Nina (Doc. No. 577 at 46), her difficult upbringing (*id.* at 45–46), the positive steps she had taken while incarcerated (*id.* at 41), and the many statements of support by her family and friends (*id.* at 3–4). Accordingly, it was not unreasonable to hold out for, and agree to, a plea deal with a mandatory minimum below twenty-five years. Although the Court ultimately imposed a sentence of forty-five years' imprisonment, counsel's advice fell within the wide range of strategic discretion accorded to counsel.

Even if Morales could show that her attorney's advice on the government's plea offers was objectively deficient, she cannot establish that she suffered prejudice due to such advice, as there is no "reasonable probability that . . . the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In imposing the forty-five-year sentence, the Court stated that "a sentence of less than that would be unjust" (Doc. No. 577 at 48), explaining that the murder of Aisha Morales "is an incredibly serious crime" with consequences that "will continue to be felt for generations" (*id.* at 40), that the murder was the natural result of a violent criminal enterprise "that went on for months and years" (*id.* at 42–43), and that Morales did not show remorse as she "continued to be a fugitive for as long as [she] possibly could" (*id.* at 45). Moreover, the Court noted that coconspirator Candido Antomattei received "30 years for drug activity" alone and that "what Catherine Morales did here is . . . much worse." (*Id.* at 47–48.) Hence, the record indicates that, even if Morales had accepted the disputed twenty-five- to twenty-seven-year offer, the Court would have nevertheless imposed an above-guidelines sentence of forty-five years.

Morales next argues that counsel provided ineffective assistance during her plea allocution by failing to contest the factual basis for her conviction under 21 U.S.C. § 848(e)(1)(A). (Doc. No. 646 at 33–43.) Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that

8

"[b]efore entering judgement on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). Here, Morales claims that, because she "did not [admit] to individually selling 1,000 grams or more of heroin," the Court lacked sufficient evidence to find that she was involved in a narcotics conspiracy under section 841(b)(1)(A) – a predicate to the section 848(e)(1)(A) conviction. (Doc. No. 646 at 33, 35, 39.) Morales asserts that her counsel provided ineffective assistance by failing to object to that issue. (*Id.* at 37.)

But Morales misapprehends the law. The Second Circuit has explained that "individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." *United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011). The fact that she did not admit to individually selling 1,000 grams or more of heroin did not render her conviction invalid, since during her plea allocution she admitted that she committed the murder while participating "in a heroin selling conspiracy that distribute[d] over . . . [one] kilo of heroin." (Doc. No. 451 at 37.) Considering that she was part of a DTO that controlled several streets in the Bronx (PSR ¶ 23), that she supervised several workers who distributed drugs (*id.* ¶ 27), and that she was part of the DTO for at least three years (*id.* ¶ 23), it cannot reasonably be argued that it was unforeseeable to Morales that the members of her conspiracy were engaged in the distribution of more than one kilogram of heroin. As a result, her counsel did not fall below an objective standard of reasonableness by failing to make a meritless objection, *see United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995), and Morales suffered no prejudice because the Court would have promptly rejected the argument that Morales was not responsible for drugs sold by her coconspirators, *see Johnson*, 633 F.3d at 118.

### III.  MORALES'S MOTION TO VACATE

In her motion to vacate, Morales argues that she was subjected to double jeopardy when she was convicted for violations of 21 U.S.C. §§ 846 and 848 based on the same underlying conduct.  (Mot. at 3.)  The Double Jeopardy Clause of the Fifth Amendment to the Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life and limb."  U.S. Const. amend. V.  The Double Jeopardy Clause protects defendants against a second "prosecution for the same offense following either an acquittal or a conviction" and "against multiple punishments for the same offense."  *United States v. Morgan,* 51 F.3d 1105, 1113 (2d Cir. 1995).  Irrespective of the legal deficiencies of her position, Morales's motion fails because it is based on a false factual premise.  Morales was not convicted of separate violations of 21 U.S.C. §§ 846 and 848; she pleaded guilty to a single count, the section 848 violation, and the Court entered a judgment of conviction on that single count.  (Doc. No. 570.)   There can be no double jeopardy issue here because Morales has been prosecuted only once for these crimes, has been convicted only once, and has been convicted on only one count.

### IV.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Morales's Petition under section 2255 and her Motion to Vacate pursuant to Rule 60 are DENIED.  In addition, because Morales has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability.  *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, Morales may not proceed in forma pauperis.  *See Coppedge v. United States*, 369

U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 646 and 676 of 12-cr-322, to close case 18-cv-10120, and to mail a copy of this order to Morales.

SO ORDERED.

Dated:       March 31, 2022
             New York, New York

                                                                      RICHARD J. SULLIVAN
                                                                      UNITED STATES CIRCUIT JUDGE
                                                                      Sitting by Designation